Alois 0. Mazur, J.
Defendant moved to preclude the People from using as evidence any information resulting from overheard telephone conversations involving the defendant and one John Moran, during the period of February 7,1969 through February 25, 1969. The said telephone conversations were intercepted by the police pursuant to an order of a County Court Judge on February 4, 1969.
Defendant maintains that there was no probable cause for the issuance of said order; that any conversations involving the defendant and one John Moran are to be precluded because the defendant was not named in said order-; and that said order was not subsequently extended or amended to cover the conversations of the defendant; and, finally, that the law relative to eavesdropping was not otherwise complied with.
The defendant herein was not specifically named in the warrant and it is conceded that no amendment of the original warrant included the name or the .substance of the telephone conversations involved. (As defendant maintains is required by section 822 of the Code of Criminal Procedure in effect at the time.)
Section 822 of the Code of Criminal Procedure did require an amendment of the original warrant to include such con *924 versations only if “ the overhearing of which was not otherwise sought pursuant to such warrant ” (cf. Code Crina. Pro., § 822, subd. 1; L. 1968, ch. 546).
While it is clear and apparent that the original application sought to allow the overhearing of conversations relative to the acceptance of “ layoffs ” and the placement of “ layoff bets ” by one John Moran, it is not very clear from the allegations in the petition that there was sufficient probable cause to support the belief that criminal activity of this type was involved. The court does not believe that the Fourth Amendment of the United States Constitution, section 12 of article I of the New York State Constitution, and the requirements of section 822 of the Code of Criminal Procedure can be abrogated or circumvented by mere allegations as to the scope of the criminal activity involved. To rule otherwise, could very well allow for the issuance of broad and comprehensive warrants wherever probable cause was shown that something generally unwholesome or nefarious was happening but where no probable cause was shown for a “ particularly described crime ” (words quoted from Code Grim. Pro., § 817, subd. 2, par. [a]; L. 1968, ch. 546). To rule otherwise would require no showing of probable cause for the interception of particular conversations. To rule otherwise would mean that once probable cause was shown for some type of criminal activity, a mere request to cover all suspected activity would suffice.
In short, the court does not believe that it was the intent of the legislators to dispense with the requirements of section 822 of the Code of Criminal Procedure whenever, and merely if, the conversations were of a type that were sought pursuant to a warrant. Implicit in section 822 and the Fourth Amendment of the United States Constitution and similar provisions of the New York State Constitution, is the requirement that there be sufficient probable cause to ‘ ‘ eavesdrop upon ’ ’ the conversations so sought.
The purpose of the eavesdropping law was ‘ ‘ to provide a comprehensive scheme for the restricted issuance of eavesdropping warrants, based upon strict standards of probable cause and necessity, and demanding scrupulous particularity in the description both of the person and place upon which the eavesdropping is to be conducted and the nature of the evidence sought thereby. The new statutory scheme is designed to comply with the constitutional standards enunciated * # # by the United States Supreme Court in Berger v. New York (388 U. S. 41) and Katz v. United States (389 U. S. 347) ” (quoted *925 from Legislative Memoranda, McKinney’s 1968 Session Laws of New York, p. 2293).
In furtherance of this purpose the Legislature required in section 817 (subd. 2, pars, [a], [b]) of the Code of Criminal Procedure that applications for eavesdroping warrants 11 must contain * * * a statement of facts establishing reasonable cause to believe that a particularly described crime has been, is being, or is about to be committed; and * * * that the conversation of a particularly described person will constitute evidence of the particularly described crime ” (L. 1968, eh. 546).
The Supreme Court in the Berger decision said (p. 56):
‘$ The need for particularity and evidence of reliability in the showing required when judicial authorization of a search warrant is sought is especially great in the case of eavesdropping.” Recognizing this, or perhaps in addition, the Legislature (L. 1968, ch„ 546) required the petition to contain “ a statement of facts establishing that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ ” (Code Crim. Pro., § 817, subd. 2, par. [d]). (A statement of facts, incidentally which is totally lacking in the petition except for the bare assertion of the conclusion.)
This court would like to point out that there may have been probable cause for the issuance of some type of eavesdropping warrant. There may have indeed been probable cause to allow for the particular telephone numbers to be “tapped”. This court, however does not feel it is necessary to rule upon this very broad issue. To do so would unnecessarily involve issues and parties not before this court.
But let us now proceed' to examine the allegations in the supporting petition for the type and comprehensiveness of the warrant sought. A reading and analysis of the supporting affidavits hardly result in a finding of probable cause for the particular type of conversations sought to be overheard, or for a particularly described crime.
The supporting affidavit alleges that an unidentified reliable informant had told the police that the telephone numbers in question were being used in bookmaking operations involving many long distance telephone calls. This type of information, if sufficient, would hardly sustain the belief that layoff bets were the principal activity of the particular enterprise. Moreover, in regard to this alleged reliable information, no allegation is made as to how the informant came upon such information or the circumstances relative thereto. This seems to be *926 an explicit requirement of the case of Spinelli v. United States (393 U. S. 410), which was decided on January 27, 1969, just a few days before the issuance of this warrant. Such allegations also seem to be the requirement of People v. Hendricks (25 N Y 2d 129). Also, in this regard, it should be noted that subdivision 3 of section 817 of the Code of Criminal Procedure requires that ‘ ‘ if the facts stated in the application are derived in whole or part from the statements of persons other than the applicant, the sources of such facts must be either disclosed or described, and the application must contain facts establishing the existence and reliability of the informants or the reliability of the information supplied by them ”.
Thus the alleged supplied reliable information and “tips”' cannot provide a basis for probable cause. Such allegations can admittedly, however, serve the purpose of revealing to the issuing Judge the reason why investigation was begun or intensified. The results of this investigation, stated in the petition,, must, however, total up to probable cause.
The results of the investigation alleged in the petition showed that the telephone numbers in question were listed to one Marge Abdolla; that the telephones were situated in a one-family dwelling owned by one Richard Kacynski; that one John Moran (who had been arrested in 1955 for selling racing data to local bookmakers) was seen entering and leaving said premises on several occasions with but a very few other persons; that said John Moran was “ observed ” (by an unidentified long time acquaintance of one Acting Detective John DeMatteo) discussing racing bets on two telephones located at said premises; that long distance telephone calls were made from said telephone numbers to a service in Philadelphia which allegedly sold unofficial race results to callers (35 calls in December and 60 in November); that some other long distance calls were made to numbers listed to or lmown to be used by: three convicted bookmakers, one heavy bettor on horse races, one individual who admitted to bookmaking, one known bookmaking establishment, one known gambler and abortionist, one person known to take bets on horse races, and one person arrested for bookmaking, and even one known bookmaker and “lay-off man”.
No information was supplied as to the sources or circumstances of the belief or conclusions that the cited individuals were known bookmakers, heavy bettors or abortionists.
Other allegations in the petition included references to relatively high telephone bills ($120.50 in January 1969, $108.80 in December, 1968, $134.05 in October and $110.15 in November) *927 and the interesting observation that upon calling the telephone numbers in question, a voice merely said “yeah” which the deponent described as the ‘ ‘ jargon of brevity used by bookmakers ”.
Upon all this it was urged upon the court that probable cause was shown that none other than John Moran was “ in constant and continuous telephonic contact with other bookmakers with whom he ‘ lays off ’ bets which are too large for him to cover ”.
That someone from these numbers may be associated with or in communication with bookmakers, horse race bettors and enterprises engaged in the dissemination of race results, is entirely likely. That the nature of this association or communication is necessarily illegal is debatable. That it was John Moran and none other (or at least any individual named in the warrant or petition) who was engaged in the business of “ laying off bets ” is pure speculation — nothing more than a bold unilluminating assertion of suspicion.
This court does not mean to imply that where evidence of a crime is fortuitously or unexpectedly obtained during the execution of a valid eavesdropping warrant, it could not be used during trial. Apparently, section 822 of the Code of Criminal Procedure, if properly complied with, could allow for the use of such evidence.
However, where, as here, there was no compliance with section 822 of the Code of Criminal Procedure; where, as here, the very conversations sought to be intercepted are attempted to be used during trial, there must be a showing of probable cause for the very seeking of the particular type of conversations and there must be strict compliance with all the other provisions of the New York eavesdropping sections. This, the court feels, has not been done in the instant case.
Motion is granted. Prepare and submit order.